Judge Marshall
delivered the Opinion of the Court.
Matthew Slaughter, M. J. Ross and Mai’cus Huling were partners engaged in carrying on salt works, for the manufacturing of salt, under a lease which was to expire in December, 1833. On the first of March, 1827 *425 Hiding and Slaughter entered into a written contract, by which Ruling transferred to Slaughter his entire interest in the concern for the remainder of the term, for the yearly rent of two thousand bushel-s of salt, to be paid to him quarterly, by Slaughter; who immediately took possession of Ruling’s interest in the well, furnacb and all the apparatus used for carrying on the works; consisting of wagons, teams, kettles, &c. Shortly afr ter the expiration of the first year, Ruling obtained a. judgment for the value of the rent then due, or a part of it; and subsequently commenced a second aetion for the recovery of further x’ent coming due according to the contract.
Commissioners a úi’l 8uit’ take testimony as to the value . of rents, report, ana decree, accordingly; but the weight of the testimony shows that, their assessment is too high: held, that the decree is, in that respect, erroneous,
To enjoin further proceedings in this action, and also, upon the judgment which had been obtained, Slaughter filed this bill, in November, i 82-8—alleging that he had been seduced into the contract by the fraud of Ruling, in concealing and misrepresenting the true quality of the water from which the works were to be supplied, and praying for a perpetual injunction, for a rescission of the contract, and for general relief.
The bill was answered, and many depositions taken; and on final hearing, the Court decreed a rescission of the contract, and a perpetuation of the injunction; but decreed also, that Slaughter should pay to Huling one third of the rent, or annual value of the works, estima^ ted by commissioners at four hundred and seventy-five dollars, and one third of the value of the various artb cles of movable property which were in use when the contract was made, and which was estimated at three hundred and seventy-five dollars and twenty-two cents., making together the sum of $850 22, for which the de* cree is rendered.
To be relieved from this portion of the'decree, Slaugh* ter prosecutes this writ of error.
We are of opinion that, the decree is erroneous in several particulars.
In the fust place, if it were proper to make any as•sessment of rents, in this suit, the assessment made bv * *426 the commissioners, is too high. It does not exceed the estimate of the witnesses examined by them, but a greater number of witnesses who depose in the principal suit» and who had better opportunities of knowing, state that# in consequence of the weakness of the salt water, the works were unprofitable, and that no profit was made after Slaughter took possession of Hiding’s interest.
An interest in salt works, including various implements, is sold, and the sale afterwards rescinded as fraudulent. A decree that the purchaser shall pay for the implements, besides paying lor their Use, is unjust & erroneous. He should be permitted to restore such of the implements as he can, and pay for those only which are lost, at their value at the time of the rescission.
Whenever a purchaser discovers that a fraud has been practised Upon him in the sale, he has a right to abandon the contract, by placing the seller in a condition to resumehis pro perty and rights as they existed before the sale. Three persons dwn salt works in partnership;' one of them, by false representations, induces an other to buy out bis interest; the latter, when he discovers tbe’ fraud, determines io disaffirm the' Contract: it is suf fieent for that purpose, under those circumstanCes, if he gives “°nce ouhat determination, to his vendor—who miiy’ hieieupon, mor position iu pirtne"^? sTho purchaser has a jif ¡pate in Thebu siness, because of the interest he hud before he' bought out his paitner, and still has, he is not. bound to give up the possession, 0.r tender back ^nd such^notice appearingtohavp b“"t ®i-vee“’u¡ty .will consider the b'y-^rem^ted^tp the condition'iu b^b^ihe-sSet
*426 And as to the movables which were used in carrying on the works, and which constituted a part of the inter* est of Ruling transferred to Slaughter, it is obviously unw just that Slaughter should be compelled to pay rent for the use of them, and also to pay their value at the time he received them.' If there were" tío other relatioti be* tween these parties, but such as grows out of the contract of the 1st of March, 1827, arid out of its rescission on the ground of fraud, Slaughter, who is the de*' frauded party, ought certainly to be permitted id r'estore such of these articles as are in a condition to be restor* ed, and should only be chargeable with such as are not, or cannot be, restored—estimating their value in the condition that they should have been in at the time oí the rescission, if they had been prudently «sed in the manner intended by the' contract.
But we think the decree is subject to a more radica} objection than that of its non-conformity to the'se prirt* ciples. Assuming, as irr the present attitude of the case' we are bound to assume, that Huling committed' a fraud-in the contract, which entitled Slaughter tea rescission,it follows, according to the well settled doctrines upori the subject, that as soon as Slaughter discovered the de* feet in' the strength of the salt wafer, in concealing arid misrepresenting which, the fraud had been committed* he had a right to put an end to the contract, and to consider it as terminated, by taking the proper steps for placing the parties in statu quo, or" for enabling Huling ta resume his former rights and interest.
It is proved, not only that Huling had knowledge of the condition of the water, and of the difficulties attend* in'g the manufacture of salt, after Imparted with his interest, but that he was expressly notified' by Slaughter,, that the water had failed* and that he' was-' at liberty to1 *427 take possession of his interest again, which he refused to do. As the rescission of the contract would throw the parties back into their former condition as partners, in which condition Slaughter and Ross owned two undivid- , 0 . ed Uiirri parts of every thing connected with the works, and Huling the remaining undivided third, and the two 0 0 7 fermer had a right to continue m possession, and carry on the works: it was not necessary that Slaughter, in tendering a rescission, should abandon any part of the pos. session, or make a corporal tender of any portion of the property. An offer to restore Huling to his interest, or, what is the Same thing, a notice or request that he should come and take it, was all that could well have , , , , .1. , . , . been done, or could reasonably have been required, in the way of tendering a rescission; and the notification . given must be deemed sufficient for that purpose. Assuming, then, that the notice was given within a reason- , , . ,. , ... . . 0 , » able time alter the detect in the salt water, upon lair and repeated experiments to remedy it, was found to be irremediable, (and the evidence justifies, n.ot only this assumption, but the further assumption,, that Huling knew of these experiments and their result,) the notice amounted in itself to a disaffirmance of the contrast, in consequence of which the parties, when the right of rescission is afterwards established to the satisfaction .of a Court, are to be considered as having been remitted to. their former rights and relations, as if the contract. had. never been made.
By the rescission, hove, the’parties were brought back to the same, condition they were in belbr0 one; and he has jj?"fendee^or the firm, bat for |heprofitSsh.aie
If, as we have no doubt was the case, Slaughter had. a right to a rescission of the contract, he did all that was necessary on his part to effect it; and he, in conjunction . , , , , . , with Ross, had a right to prosecute, m a prudent manner, the ordinary business of the firm. In refusing to resume his interest and place as a partner, Huling, as it has turned out, put himself in the wrong. Had he then gone back into the firm, and thus, in effect, concurred in rescinding the contract, he could have required nothing more than a fair account of the transactions of the firm, during his temporary withdrawal. Has he, by standing out until a fraud has been established, and a rescission enforced upon him by the decree of a Court, entitled. *428 himself to any thing more? We think not. By the re* scission of the contract he is restored to the rights and obligations of a partner. Pie has no rights, under the contract, which has been rescinded. That contract might have given him a separate interest from that of the firm. Its réscission has an opposite effect. And he has no separate right in the. partnership effects, but such as may result from an account and settlement of the partnership affairs. Nor is either of the partners separately liable to hint, for any use or abuse'of the partnership effects, except as he may be made to appear so on such a settlement.
The party who sold out ut supra/ refuses to acquiesce in the rescission,and is forced to it by suit. If he wants a dissolution, account, c. c. he must file his cross bill for that purpose—to Which both of his partners must'be'parties; he cun have no decree nguinit the ' single one, who alone sed;s relief against the fraudulent Gale.
By the decree as rendered, one object, perhaps a principal one, of the contract which is rescinded as fraud lent, has in truth been effected. Huling has been let out of a business in which he anticipated loss; and more* over, the; defrauded party has beén compelled to purchase his interest in the firm at a high value, and without any regard to the actual state of its affairs. This seems to be unreasonable.
Had Huling made his answer a cross bill, and brought Ross, as well as Slaughter, before the Court, and prayed for an account and settlement &c. in case his contract with Slaughter should be rescinded, he would doubtless, bave obtained a decree for an account, and might ultimately have been entitled to a decree for money against one or both of the partners. But as he has done nothing of this, having prayed only to have the benefit of the contract which has been rescinded; and as the rescission of that contract has created no separate responsibility on the part of Slaughter, and in his favor, we do not perceive that he is entitled to any relief as the case stands; or that the Circuit Court, after decreeing a rescission of the contract and a perpetuation of the injunction, with {he costs of this suit, as it did, could rightfully proceed any further in the case.
We are of opinion, therefore, that the decree for eight hundred and fifty dollars and twenty-two cents, in favor of Huling and against Slaughter, is erroneous; and the same is reversed, _set aside and annulled; and the cause Is remanded.